## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MONICA M. HOLT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cv-01871-TWP-MJD |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Monica M. Holt ("Ms. Holt") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). For the following reasons, the Court **AFFIRMS** the decision of the Commissioner.

## I.     BACKGROUND

### A.     Procedural History

On January 4, 2013, Ms. Holt filed an application for DIB, alleging a disability onset date of July 6, 2012. (Filing No. 13-2 at 10.) Her claims were initially denied on May 8, 2013, and again on reconsideration. *Id.* Ms. Holt filed a timely written request for a hearing and on July 15, 2014, a hearing was held before Administrative Law Judge James R. Norris (the "ALJ"). *Id.* Ms. Holt was present and represented by counsel. A medical expert, Lee Fischer, M.D., a licensed clinical psychologist, Don Olive, Ph.D., and vocational expert, Deborah A. Dutton-Lambert (the "VE") appeared and testified at the hearing. *Id.* On August 7, 2014, the ALJ denied Ms. Holt's

applications for DIB.  *Id.* at 7-24.  On September 25, 2015, the Appeals Council denied Ms. Holt's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  *Id.* at 2-5.  On November 24, 2015, Ms. Holt filed this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).  ([Filing No. 1].)

**B.     Factual Background**

At the time of her alleged disability onset date, Ms. Holt was forty-six years old, and she was forty-eight years old at the time of the ALJ's decision.  She is a high school graduate and has a past work history of being a claims support specialist.  1999, Ms. Holt was diagnosed with human immunodeficiency virus ("HIV").  ([Filing No. 13-12 at 38].)  At the time of her diagnosis she worked as a clerk with CNA Insurance.  *Id.*  After experiencing persistent pain in her neck and left shoulder, Ms. Holt had three surgical procedures on her lymph nodes in an attempt to reduce swelling and pain.  ([Filing No. 13-7 at 26]; [Filing No. 13-14 at 5]; [Filing No. 13-18 at 74].)  In 2010, Ms. Holt underwent her first procedure, and made a slow but full recovery and eventually returned to work.  ([Filing No. 13-18 at 74].)  Ms. Holt began to redevelop pain in her neck and left shoulder, causing Ms. Holt to stop working on July 6, 2012.  ([Filing No. 13-2 at 38].)

On July 9, 2012, Ms. Holt underwent a second lymph node biopsy procedure conducted by Mary A. Maluccio, M.D.  ([Filing No. 13-7 at 24-25].)  Dr. Maluccio completed a disability insurance form for Erie Indemnity Company, indicating that Ms. Holt should stop working for ten days beginning on July 9, 2012 due to a condition that began on June 22, 2012.  ([Filing No. 13-16 at 41].)  Ms. Holt never returned to work.  On July 24, 2012, Ms. Holt's biopsy results suggested that she suffered from necrotizing granulomas and histoplasmosis, which caused difficulties with moving her neck and raising her arms due to stiffness.  ([Filing No. 13-7 at 22].)  To remedy the

stiffness, Ms. Holt attended twenty-six physical therapy sessions, performing a variety of exercises designed to strengthen and improve her range of motion.  *Id*. at 31-37.

On August 21, 2012, Richard B. Kohler, M.D., evaluated Ms. Holt and found that the surgical wounds in Ms. Holt's neck healed well, but noted that she experienced pain when he performed deep palpation in Ms. Holt's neck.  (Filing No. 13-8 at 20-21.)  Thereafter, Dr. Kohler completed a medical questionnaire form, stating that Ms. Holt could not work until September 17, 2012.  (Filing No. 13-18 at 2-3.)

After completing the physical therapy sessions, Ms. Holt returned to Dr. Kohler on October 2, 2012.  (Filing No. 13-7 at 88.)  She continued to face difficulties with shoulder mobility and persistent pain in her left neck and shoulder.  *Id.*  Ms. Holt was concerned about returning to her job, which involved a lot of time in front of the computer, because using a computer contributed to her shoulder pain.  *Id.*  On physical examination, Ms. Holt showed small palpable nodes at the base of her neck that were very tender to even light palpation.  *Id.*  She could passively elevate her arm to 90-degrees, although pressure over her trapezius muscle and deltoid elicited pain.  *Id.*  The examination further showed that Ms. Holt maintained equal grip strength bilaterally, although gripping on the left produced some discomfort.  *Id*. at 89.  Dr. Kohler diagnosed Ms. Holt with HIV, left shoulder and neck pain, histoplasmosis, depression, a history of intermittent noncompliance with HIV treatment, and a past history of histoplasmosis.  *Id.*

On October 23, 2012, Ms. Holt returned to Dr. Kohler.  (Filing No. 13-8 at 14.)  Dr. Kohler found that there was limited improvement in her left shoulder pain since the last visit and that Ms. Holt concurrently developed a general pain syndrome in her right shoulder and upper back area.  *Id*. at 15.  After showing a limited range of motion on examination, Dr. Kohler adjusted Ms. Holt's medications and referred her to Alexander D. Mih, M.D., an orthopedic surgeon.  *Id.* at 15.  On

November 6, 2012, Ms. Holt asked Dr. Kohler about disability benefits. *Id.* at 12. Dr. Kohler informed Ms. Holt that he did "not make disability judgments but rather provide evidence to the social security disability administration," and explained "that disabling conditions must be expected to last a year" before disability could be awarded. *Id*.

Ms. Holt met with Dr. Mih on November 6, 2012. (Filing No. 13-7 at 98.) Her physical examination displayed a limited range of motion on her left side, but no limitations on the right. *Id*. Dr. Mih sent Ms. Holt for an electromyogram ("EMG") study that revealed relatively minor radiculopathy. *Id.* at 347. After reviewing the study, Dr. Mih concluded that the radiculopathy did not pose a significant contribution to her discomfort, but recommended the Ms. Holt see a neurosurgeon to determine if further x-rays or scans are useful. *Id*.

Ms. Holt returned to Dr. Kohler on December 18, 2012, indicating that she recently interviewed for a different job, but that she could not currently work due to her health. (Filing No. 13-8 at 10.) Dr. Kohler examined Ms. Holt and determined that she was in visible pain, there was some neck tenderness, and Ms. Holt preferred not to rotate, flex, or extend her neck. *Id*. Dr. Kohler concluded that Ms. Holt's neck pain may have been caused by fibromyalgia. *Id.* at 11.

On January 31, 2013, neurologist Brent A. Huffman, M.D., conducted a neurology consultation with Ms. Holt. *Id.* at 38-39. Ms. Holt reported significant difficulty raising her left arm above 90-degrees. *Id.* at 39. Physical examination revealed normal muscle bulk and tone, normal reflexes and intact sensation in her upper extremities, tenderness along the trapezius muscles, and a painful range of motion in her left upper extremity. *Id*. Dr. Huffman believed that the radiculopathy shown by her EMG was incidental, not related to Ms. Holt's severe pain, and advised that Ms. Holt obtain an MRI of her cervical spine. *Id*. A MRI study of Ms. Holt's cervical spine, conducted on February 6, 2013, showed a small central disc protrusion resulting in mild

4

spinal stenosis.  *Id*. at 6-7.  The study further revealed large heterogeneous masses in the supraclavicular fossa in Ms. Holt's neck, likely representing necrotic lymph nodes.  *Id*.

On February 7, 2013, Ms. Holt followed up with Dr. Huffman.  *Id*. at 65.  Dr. Huffman reviewed the MRI study and confirmed a diagnosis of histoplasmosis given the revelation of five necrotic lesions in the left shoulder.  *Id.*  On February 19, 2013, neurosurgeon Nicholas M. Barbaro, M.D., evaluated Ms. Holt pursuant to a referral from Dr. Kohler.  (Filing No. 13-14 at 5-6.)  Dr. Barbaro concluded that, while surgery posed a risk of further nerve damage, Ms. Holt showed progressive brachial plexopathy and without surgery she may lose more plexus function. *Id*.

On April 5, 2013, J. Nathan Smith, M.D., examined Ms. Holt and determined that Ms. Holt showed a full, or nearly full, range of motion in all areas except her shoulders and cervical spine. (Filing No. 13-13 at 33-35.)  On May 7, 2013,  M. Ruiz, M.D., reviewed Ms. Holt's medical record and concluded that Ms. Holt was capable of sitting for six hours and standing or walking for six hours in an eight-hour work day.  (Filing No. 13-3 at 9-10.)

On May 29, 2013, Ms. Holt underwent a third procedure to debride and excise inflamed lymph nodes.  (Filing No. 13-14 at 7.)  She was discharged on May 30, 2013, and advised not to lift greater than ten pounds and refrain from strenuous activity for two weeks following the procedure.  (Filing No. 13-14 at 11-12.)  On June 25, 2013, Dr. Barbaro stated in a letter that Ms. Holt had a "nice outcome" after her procedure and that her scars healed well. (Filing No. 13-16 at 112.)  Dr. Barbaro noted that Ms. Holt had a frozen shoulder and some neuropathic pain in the shoulder and arm, but otherwise showed no new neurological deficits.  *Id*.  Ms. Holt's strength and sensation below the shoulder were essentially normal despite some residual pain.  *Id.*

On July 8, 2013, J. Sands, M.D., reviewed Ms. Holt's medical record and concluded that she was capable of sitting for six hours and standing or walking for six hours in an eight-hour work day.  (Filing No. 13-3 at 23-24.)  The following day, Ms. Holt returned to Dr. Kohler for an evaluation and admitted to being only "partially compliant" with her HIV regimen.  (Filing No. 13-18 at 16.)  She attributed her noncompliance to a faulty memory, which caused her to forget to take her medications.  *Id*.  Ms. Holt continued having pain in her neck and difficulty elevating her left shoulder.  *Id*. at 16-17.  Between July 12, 2013 and August 15, 2013 she attended fourteen sessions of physical therapy and made limited success.  (Filing No. 13-17 at 108-131.)

On August 14, 2013, Dr. Kohler again evaluated Ms. Holt and determined that in an eight-hour work day Ms. Holt could sit for two hours, stand and walk for two hours, but needed to alternate between sitting and standing at will.  (Filing No. 13-18 at 4, 13.)  Dr. Kohler precluded grasping, pushing, pulling, fine manipulation, and repetitive motions with the hands, as well as use of the feet for foot controls.  *Id*.  Dr. Kohler opined that Ms. Holt could not lift any weight, engage in postural activities, have exposure to heights, machinery, or driving automotive equipment, however, Ms. Holt faced no limitations to respiratory irritants or extreme temperatures.  *Id*. at 5.  Dr. Kohler completed additional forms stating that Ms. Holt's diagnoses included left brachial plexopathy, generalized pain syndrome, histoplasma lymphadenitis, AIDS, and that Ms. Holt faced severe mental limitations from her pain that precluded attention and concentration for even simple unskilled work tasks.  *Id*. at 6-12.

On August 23, 2013, Mark Bruns, M.D., evaluated Ms. Holt and determined that Ms. Holt's physical pain would prevent even sedentary work.  *Id*. at 46.  Dr. Bruns found that the mental effects of Ms. Holt's pain posed a moderate impact to her attention and concentration,

constituting a significant handicap with sustained attention and concentration and effectively eliminating her ability to perform skilled work tasks. *Id.* at 47.

On February 11, 2014, Andrew J. Koerber M.D., evaluated Ms. Holt and diagnosed HIV/AIDS and histoplasmosis with lymphadenopathy affecting the left brachial plexus. *Id*. at 78. Dr. Koerber opined that Ms. Holt retained the ability to perform activities including sitting, standing for short periods, moving for short periods, lifting and carrying objects lighter than 10-15 pounds, handling objects with both hands, kneeling, squatting, hearing, and speaking. *Id*. Dr. Koerber also completed a medical form, opining that Ms. Holt could lift and carry up to twenty pounds occasionally and ten pounds frequently. *Id.* at 81. In an eight-hour workday, Dr. Koerber found that Ms. Holt could sit for eight hours, stand for four hours, and walk for two hours. *Id.* at 82. Ms. Holt could also perform occasional reaching, pushing and pulling, she could frequently handle, finger, feel, and she could continuously use her feet. *Id.* at 83. Ms. Holt was further restricted to occasional climbing of ladders and scaffolds, frequent balancing, stooping, kneeling, crouching, crawling, and climbing of stairs and ramps, as well as frequent or continuous exposure to all environments. *Id.* at 85. Dr. Koerber concluded that Ms. Holt can shop, travel without a companion, use public transportation, prepare simple meals, attend to personal care, and sort, handle, and use paper files. *Id.* at 86.

On February 22, 2014, Ms. Holt complained of hurting "all over." *Id.* at 92. Dr. Bruns examined her and determined that Ms. Holt had no tenderness in her neck or lymphadenopathy, she maintained a normal range of motion and normal strength throughout, and no abnormalities. *Id.* Dr. Bruns diagnosed hypertension that responded well to medications, hypercholesterolemia that was stable, fibromyalgia, and dyspepsia. *Id*. at 93. On April 1, 2014, x-rays of Ms. Holt's

right shoulder were normal, and x-rays of her left shoulder showed no significant changes. *Id*. at 98.

During the administrative hearing, Ms. Holt testified that she received short-term disability benefits, and was currently receiving long-term disability. (Filing No. 13-2 at 38.) After recovering sufficiently from her July 9, 2012 surgery, Ms. Holt planned to return to work, however she did not, because she continued having pains in her left arm. *Id*. at 39. Ms. Holt is right handed. *Id*. She testified that approximately six months to one year prior to the administrative hearing, she began enduring pain over her entire body that caused her feet to hurt and swell. *Id*. at 40. Ms. Holt further testified that she has memory issues that she attributes to her fibromyalgia diagnosis, however, she concedes that she has never been tested regarding this issue. *Id.* at 41.

Dr. Fischer, who was present during the hearing and reviewed Ms. Holt's medical records, testified that Ms. Holt is HIV positive, has chronic neck pain, a history of left brachial plexus injury, and fibromyalgia. (Filing No. 13-2 at 33.) Dr. Fischer opined that Ms. Holt's medical conditions do not amount to any listed impairment, however, he stated that Ms. Holt's work activities should be limited to sedentary physical exertional work. *Id.* Ms. Holt can frequently balance or stoop, may occasionally climb stairs, climb ramps, kneel, crouch, or crawl, but may never climb ladders, scaffolds, or ropes. *Id*. at 34. Dr. Fischer testified that Ms. Holt can occasionally reach overhead bilaterally, constantly reach in all other directions, push, pull, handle, finger, and feel with the right upper extremity, and she can frequently reach in all other directions, push, pull, finger, feel, and handle with the left upper extremity. *Id.* Dr. Fischer further opined that Ms. Holt should avoid all unprotected heights and avoid working on moving mechanical machinery, or unprotected machinery. *Id.* at 35.

Dr. Olive, who was present during the hearing testified that Ms. Holt's medical records revealed the presence of a medically determinable mental impairment. *Id.* at 36. Dr. Olive testified that Ms. Holt was diagnosed with depressive disorder and anxiety disorder in April 2013 and February 2014, however, Dr. Oliver contends that Ms. Holt's disorder is non-severe. *Id.* at 36-37.

During the administrative hearing, the VE testified about Ms. Holt's work history and current capacity to work. The VE testified that Ms. Holt's past employment as a claims support specialist amounts to sedentary, semi-skilled work. *Id.* at 45-46. The ALJ presented a hypothetical to the VE that included all of the limitations and restrictions that Dr. Fischer set out for Ms. Holt, with the additional limitation of Ms. Holt's age, high school education, and past work experience. *Id.* at 46. The VE testified that the hypothetical person could perform Ms. Holt's past work as a claims support specialist. *Id.* The ALJ then tweaked the original hypothetical and asked, due to the effects of pain and the hypothetical's inability to perform reliably on a schedule of eight hours a day and five days a week, whether the individual could perform Ms. Holt's past relevant work. *Id.* The VE testified that such a person could not perform Ms. Holt's past relevant work or any other jobs. *Id* at 47.

## II.   <u>DISABILITY AND  STANDARD OF REVIEW</u>

Under the Act, a claimant may be entitled to DIB only after she establishes that she is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous

work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience.  42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled.  At step one, if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors.  20 C.F.R. § 416.920(a)(4)(i).  At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, she is not disabled.  20 C.F.R. § 416.920(a)(4)(ii).  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled.  20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then her residual functional capacity will be assessed and used for the fourth and fifth steps.  Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite her mental and physical limitations."  *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p).  At step four, if the claimant is able to perform her past relevant work, she is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).  At the fifth and final step, it must be determined whether the claimant can perform any other work in the relevant economy, given her RFC and considering her age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v).  The claimant is not disabled if she can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).  The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step.  *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred.  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ.  *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008).  While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome."  *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted."  *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993).  However, the "ALJ's decision must be based upon consideration of all the relevant evidence."  *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).  The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability.  *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III.   THE ALJ'S DECISION

The ALJ first determined that Ms. Holt met the insured status requirement of the Act through December 31, 2017.  He then began the five-step analysis.  At step one, the ALJ found that Ms. Holt had not engaged in substantial gainful activity since July 6, 2012, her alleged disability onset date.   At step two, the ALJ found that Ms. Holt had the following severe impairments:  HIV, chronic neck pain, left brachial plexus injury, and fibromyalgia.  At step three, the ALJ concluded that Ms. Holt does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ then determined that Ms. Holt had an RFC to perform sedentary work with the following limitations:

> The claimant can never climb ladders [] or ropes. The claimant can occasionally climb stairs or ramps; kneel; crouch; or crawl. She can frequently balance or stoop. The claimant can only occasionally reach overhead bilaterally. The claimant can constantly reach in all other directions, push/pull, handle, finger, and feel with the right upper extremity. The claimant can frequently reach in all other directions, push/pull, finger, feel, and handle with the left upper extremity. The claimant should avoid all unprotected heights and working around moving mechanical machinery.

([Filing No. 13-2 at 16](#)).  At step four, the ALJ determined that Ms. Holt was capable of performing her past relevant work as a claims clerk.  The ALJ went on to determine at step five that Ms. Holt was not disabled.  Therefore, the ALJ denied Ms. Holt's application for DIB because she was not disabled.

### IV.   DISCUSSION

In her request for judicial review, Ms. Holt argues two reasons for remand.  Ms. Holt first asserts that remand is appropriate because the ALJ failed to properly consider her severe

impairment of fibromyalgia and chronic pain.  Ms. Holt also contends that the ALJ erred in concluding that she could perform her past work.

A.   **Fibromyalgia**

Ms. Holt argues that the ALJ erred in ignoring the medical opinions of Dr. Kohler, Dr. Smith, Dr. Bruns, and Dr. Fischer, when concluding that her fibromyalgia was not disabling.  She contends that the ALJ's decision is contrary to medical evidence, plainly erroneous, and fails to build an accurate and logical bridge from all of the evidence in the record to the conclusions.  Ms. Holt argues that the ALJ acted as his own medical expert when second-guessing the opinions of Dr. Kohler and Dr. Bruns, as well as when rejecting Ms. Holt's subjective complaints of pain.

The Commissioner responds to Ms. Holt's argument by explaining that the ALJ considered Ms. Holt's entire record, including Dr. Kohler's and Dr. Bruns' assessments, but gave greater weight to the opinions of Dr. Smith, Dr. Ruiz, Dr. Koerber and Dr. Fischer.  The Commissioner asserts that the ALJ acknowledged that Ms. Holt made a slow recovery after her second surgery and the first six months of 2013.  The Commissioner also contends that the ALJ properly noted that Ms. Holt's medical records reflect a significant improvement in her condition after her third surgery in March 2013, and that Ms. Holt failed to provide any evidence that her condition continued to limit her significantly after her third surgery.

On April 5, 2013, Dr. Smith determined that Ms. Holt showed a full, or nearly full, range of motion in all areas except her shoulders and cervical spine.  Dr. Ruiz and Dr. Sands, reviewed Ms. Holt's medical records and concluded that Ms. Holt was capable of sitting for six hours and standing or walking for six hours in an eight-hour work day.  On February 11, 2014, Dr. Koerber evaluated Ms. Holt and opined that Ms. Holt could sit for eight hours, stand for four hours, and walk for two hours during an eight-hour work day.  During the hearing, Dr. Fischer concluded that

13

Ms. Holt could perform sedentary work with restrictions.  The Commissioner contends that the ALJ properly discounted the findings of Dr. Kohler and Dr. Bruns because their conclusions were rendered before Ms. Holt's recovery.  Additionally, the Commissioner asserts that the ALJ did not err in rejecting Ms. Holt's testimony as not credible, because the record not only shows that Ms. Holt improved after her third surgery, but that she failed to comply with her treatment.

The Court first notes that it may not reweigh the evidence or substitute its judgment for that of the ALJ when he determined how much weight to give to specific evidence.  *See Overman*, 546 F.3d at 462.  The Court finds that the ALJ sufficiently explained why he concluded that Ms. Holt's fibromyalgia was not disabling based on the conclusions given by Dr. Smith, Dr. Ruiz, Dr. Sands, Dr. Koerber and Dr. Fischer.  The ALJ also explained that he considered Dr. Kohler's and Dr. Bruns' assessments, as well as Ms. Holt's subjective complaints, however, he gave less weight to their findings because they were not well supported by the record and contradictory to the more recent assessments in Ms. Holt's medical record.  The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability.  *See Scheck*, 357 F.3d at 700.  He has done so in this regard, therefore, remand is not warranted on this issue.

**B.** **Past Work Experience**

Ms. Holt also argues that the Court should reverse the ALJ's decision because the ALJ failed to give full consideration to her medical records when concluding that she could perform her past work.  Ms. Holt contends that Dr. Kohler's evaluation conducted on August 21, 2012, and Dr. Bruns' evaluation conducted on August 23, 2013, proved that she could not perform any full time work.  Specifically, Dr. Kohler opined that in an eight hour workday Ms. Holt should be limited to sitting for two hour and standing or walking for a total of two hours and Dr. Bruns

14

opined that Ms. Holt's physical pain would prevent even sedentary work and found that the mental effects of Ms. Holt's pain posed a moderate impact to her attention and concentration.  In light of these opinions, Ms. Holt contends that the ALJ's RFC assessment did not accurately describe her impairments.

In response, the Commissioner asserts that the ALJ's RFC finding was appropriate and the hypothetical question posed to the VE was also sufficient. The Commissioner asserts that Ms. Holt's argument regarding the RFC, which states that Ms. Holt can perform limited sedentary work, is the same as the argument discussed above.  The Commissioner again contends that the ALJ addressed all of Ms. Holt's limitations and properly gave great weight to the opinions of Dr. Smith, Dr. Ruiz, Dr. Koerber, Dr. Fischer, as well as the testimony of the VE when determining whether Ms. Holt was capable of performing her past work as a claims clerk.  The Commissioner argues the ALJ appropriately relied on the VE's testimony that a person of Ms. Holt's age, education, vocational profile and residual functional capacity could perform Ms. Holt's past work.

In reply, Ms. Holt argues that she cannot perform any full time work and, as Dr. Kohler concluded, her sitting, standing, and walking should be limited to a total of four hours in an eight-hour work day.  Ms. Holt contends that remand is warranted because, in its Response Brief, the Commissioner stated that the ALJ relied on Dr. Fischer's testimony that Ms. Holt "could perform sedentary work with restrictions including no climbing of ladders, ropes or scaffolds…"  Ms. Holt, argues that this statement is inconsistent with the ALJ's report that "Dr. Fischer opined that the claimant is limited to less than a full range of sedentary exertion except she can never climb ladders, ladders, or ropes." Ms. Holt contends that Dr. Fischer stated that Ms. Holt could sit, stand or walk for two hours non-stop, and can stand for two hours total in an eight-hour day.

Ms. Holt is mistaken, because the ALJ did note in the decision that "Dr. Fischer opined that the claimant is limited to less than a full range of sedentary exertion." (Filing No. 13-2 at 18.) Further, at the hearing, Dr. Fischer testified that Ms. Holt should be "limited to sedentary physical exertional work." *Id.* at 33. Dr. Fischer affirmed that Ms. Holt could stand or walk for two hours non-stop, when specifically asked by Ms. Holt's attorney whether Ms. Holt could stand or walk for two hours non-stop. *Id*. at 35. Dr. Fischer also testified that Ms. Holt could sit without limitation, but that she should typically sit for two hours at any one time. *Id.* Ms. Holt's attorney again asked about the period of time that Ms. Holt could stand and Dr. Fischer replied "two hours", however, "sedentary would be two hours total in an eight-hour day." *Id.* The Court finds that Dr. Fischer's elicited testimony did not limit Ms. Holt's sitting, standing or walking to a total of four hours in an eight-hour work day, as Ms. Holt would suggest.

Even despite the testimony of Dr. Fischer, after reviewing the ALJ's decision and the record evidence, the Court finds that the ALJ also relied on the opinions of Dr. Smith, Dr. Ruiz, Dr. Sands, Dr. Koerber, the VE, as well as other clinical findings, when determining that Ms. Holt had an RFC to perform sedentary work with various limitations. The ALJ explained that the restrictions advocated by Drs. Kohler and Bruns, namely that Ms. Holt could not perform the sitting, standing, and walking required by sedentary work; were unneeded limitations and inconsistent with Ms. Holt's longitudinal medical record. On these bases, the Court finds that the ALJ gave full consideration to Ms. Holt's medical records when concluding that Ms. Holt was not disabled and could perform her past work. Therefore, remand is not warranted in this case.

## V.   <u>CONCLUSION</u>

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED.** Ms. Holt's appeal is **DISMISSED**.

**SO ORDERED.**

Date:  12/2/2016

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov

17